[S. F. No. 20751. In Bank. Feb. 15, 1962.]

ALLAN BROTSKY, Petitioner, v. THE STATE BAR OF CALIFORNIA, Respondent.

Charles W. Decker and Benjamin Dreyfus for Petitioner.

Garrett H. Elmore, Joseph A. Ball and John J. Goldberg for Respondent.

THE COURT.—Allan Brotsky, a member of the State Bar of California and the petitioner herein, brought this proceeding to review certain actions of the Board of Governors and certain interim orders of one of its San Francisco local administrative committees. All of these actions and orders were a portion of State Bar disciplinary proceeding No. S. F. 1881 now pending before the local committee, in which petitioner is respondent.

The two principal questions involved are:

(1) Is review available to petitioner at this stage of the disciplinary proceedings?

(2) Are discovery procedures available to the parties in such a proceeding?

If these two questions are answered in the affirmative, then other questions arise in regard to the nature and extent of the available vehicles of discovery.

The background of the case is as follows:

On November 3, 1960, the committee served Brotsky with a notice to show cause why he should not be disciplined for the solicitation of professional employment by means of a retainer agreement with the Ship Clerk's Local 34, I.L.W.U., with which petitioner, in consideration of a monthly retainer fee, agreed to perform legal services for the client, and also agreed to provide the client's individual members with office consultations on nonunion matters. Specifically, the notice charged Brotsky with breach of rules 2 and 3 of the Rules of Professional Conduct of the State Bar of California.[1] Those rules are quite lengthy. Summarized, they prohibit solicitation of professional employment by an attorney, acceptance of employment known to have been solicited, and the sharing of compensation for legal services with unlicensed persons, associations or corporations. Insurance companies which have a financial interest in the subject matter, and attorneys retained by them to represent the insured, are specifically exempted from the operation of that portion of rule 3 which prohibits acceptance of professional employment which has been solicited.

Brotsky answered, admitting the terms of the retainer agreement as set forth in the notice to show cause, but asserted that neither that agreement nor his activities thereunder constituted willful solicitation of employment, acceptance of solicited employment, or aiding or abetting an unlicensed organization to practice law. He also urged that, by reason of the statutory exemption of attorneys for insurance companies, and the further fact that the State Bar has authorized or condoned similar practices by the attorneys for other groups and associations, application of rules 2 and 3 to trade unions and their attorneys constitutes a denial of equal protection of the laws.[2] By such answer, Brotsky raised the basic

---

[1] The Rules of Professional Conduct were promulgated under the power granted to the State Bar by the provisions of section 6076 of the Business and Professions Code, and were duly approved by this court, also as provided by that section.

[2] The merits of the disciplinary proceeding are not now before us. We must, however, define the issues raised in such proceeding because those issues directly affect the problems of discovery here involved. It should be mentioned that the disciplinary proceedings have been voluntarily held in abeyance pending the determination of the instant proceeding.

issue as to whether the retainer agreement and his activities in regard thereto constituted a breach of the rules, as well as the narrower issue regarding the legality of those rules and their administration by the State Bar. The problems involved in the latter issue grow out of what has come to be known as "Group Legal Service." Certainly, we judicially know that there is not a unanimity of opinion on the problems involved in the regulation of such service.

With his answer, Brotsky filed one set of interrogatories directed to the president and Board of Governors of the State Bar, another set of interrogatories directed to the secretary, and two proposed subpoenas duces tecum. The interrogatories directed to the president made reference to a published report of the Board of Governors stating that the findings of a Special Committee on Group Legal Services (Clarence S. Hunt, chairman) revealed that some legal service was being rendered to members of an automobile club by the club's attorneys, and that certain groups, including employees' organizations and apartment house associations, advertise the availability of legal services by staff counsel as an inducement to membership. The interrogatories requested that the president furnish copies of that committee's transcripts of testimony, and other documents constituting the basis of the mentioned report, and also asked if the president had other information concerning the nature and extent of legal services furnished to individual members by the legal staffs of automobile, trade, business or professional associations, cooperatives or corporations.[3]

The interrogatory addressed to the secretary of the State Bar asked only whether or not any disciplinary proceedings have been instituted since the dates of and in regard to the matters referred to in certain specified reports of respondent's committees which inquired into group legal services.

The two proposed subpoenas were directed, respectively, to the chairman of one of the aforementioned committees which investigated group legal services, and to the secretary of the State Bar. If issued, those subpoenas would have directed the production, at depositions, of various documents related to both published and unpublished reports of such committees, including minutes, testimony taken, and other material consti-

[3]The fact that this request, labeled as "Interrogatories," is, in part, a request for the production and inspection of documents is not of importance to this discussion for the reason that respondent does not raise any issue as to the manner in which petitioner sought discovery.

tuting a basis of such reports. In addition, the secretary was requested to produce all documents relating to or used as a basis for the adoption of that portion of rule 3 which exempts attorneys for insurance companies from the ban on accepting solicited legal services when the insurance company has a financial interest in the matter, as well as copies of the so-called "treaties" which the State Bar has publicly stated to be in existence between that organization on the one hand and insurance companies and automobile associations on the other.

Following these requests, the parties exchanged informal correspondence in which respondent claimed that the discovery statutes were not applicable to State Bar disciplinary proceedings, and also asserted that much of the information sought was privileged. Pointing out that the Rules of Procedure adopted by the Board of Governors provided no definite procedure for obtaining available information, it suggested that a proper method would be to file a written motion, supported by affidavit, with the local administrative committee. In addition, the Board of Governors adopted a resolution expressing its view that neither existing law nor the Rules of Procedure authorized the interrogatories proposed by petitioner; determined that the information sought by both the interrogatories and the depositions was subject to the general principle of confidentiality and privilege; and authorized a subcommittee of the board (named in the resolution) to determine whether limited disclosure could be made without detriment to the public interest, and to take action on such determination.

Petitioner thereupon renewed his requests in the form of a motion (and supporting affidavit) filed with the administrative committee, as suggested by respondent, and added a request that the Bar disclose the information upon which the conclusionary allegations in the notice to show cause were based. The affidavit, among other things, reaffirmed petitioner's defense of alleged discrimination, and pointed out that the materiality of his requests lay not so much in the fact that attorneys representing associations other than trade unions were allowed to continue group legal services, as it lay in the unreasonable classification created by the State Bar's informed acquiescence therein. It also pointed out that since the information requested pertained to the State Bar's knowledge, it could only be obtained from respondent, its officers and committee chairmen.

In reply, respondent filed with the committee a written

document entitled "(A) Motion to terminate deposition proceeding. (B) Opposition to application for subpena duces tecum and motion to produce documents and information." This document was supported by a memorandum of points and authorities, an affidavit of respondent's secretary, and a further resolution of the Board of Governors. These documents constituted a reiteration of respondent's position as set forth in the informal correspondence, together with the further contentions that: (a) section 6052 of the Business and Professions Code, providing that "[d]epositions may be taken and used in the same manner as in civil cases," became inapplicable to State Bar proceedings on January 1, 1958, when the previously existing code provisions on depositions were superseded by the new discovery statutes; (b) the Board of Governors of the State Bar is entitled to prescribe the rules of procedure governing disciplinary proceedings, and by adopting rule 14 it has limited discovery to the taking of depositions in cases where witnesses will not otherwise be available; (c) the persons from whom petitioner seeks discovery will be available at the hearing before the local administrative committee;[4] (d) petitioner's application is indefinite, and fails to show the materiality and relevancy of the matters sought to be discovered; (e) petitioner's request is burdensome and oppressive, in that no central index is kept by the respondent of the particular type of violation referred to in petitioner's application for information, and to answer the same would require a search of all records of disciplinary proceedings which were handled during the years involved; (f) that full transcripts of the proceedings of the Hunt and Sutro investigative committees were not made; (g) that indiscriminate disclosure of complaints and investigation of unauthorized practice would not be in the public interest. The resolution of the board reiterated the confidential nature of the matters sought by petitioner, in general, while acknowledging that those portions which may have been developed at public hearings were not confidential, and further directed all officers and agents of the board to assert such privilege in this matter, while allowing them to use their initiative in releasing (by

[4]Rule 14 originally followed the language of section 6052 and provided, in part, that depositions may be taken "in the same manner, as far as applicable, as in civil cases." Upon the adoption of the discovery statutes by the Legislature, the Board of Governors amended that rule to its present form, providing that depositions might be taken only when "the testimony of material witnesses . . . cannot reasonably be produced at the hearing or investigation. . . ."

way of statement or testimony) summarized information which does not disclose the identity of the persons or the nature of the transactions involved. In addition, the committee appointed by the previous resolution was discharged.

Although it strongly contended that petitioner was not entitled to any of the information sought, as a matter of right, the respondent and its agents voluntarily furnished petitioner with some, but far from all, of the requested material. With the record in such state, the local administrative committee, by order, denied all of petitioner's motions *in toto*. That order was based on all of the assertions set forth in the motion and affidavit filed in support of respondent's opposition. It must be assumed, therefore, that the committee's order was based on every contention made by respondent.[5]

### 1. *Reviewability of the interim order*:

 It is first necessary to determine the propriety of interim review of an order made by a local administrative committee in a proceeding of this nature. Petitioner contends that the applicable statutes (including the Rules on Appeal) contemplate such review. Respondent contends that review should not be utilized to consider the propriety of an order which will not become final until reviewed by the Board of Governors. Its argument is not so much a denial of this court's power to review under the stated circumstances as it is a contention that as a matter of policy such a review should be refused.

Section 6082 of the Business and Professions Code (included in that portion of the State Bar Act which deals with disciplinary proceedings by the Board of Governors) reads as follows:

"Any person complained against and any person whose reinstatement the board may refuse to recommend may have the action of the board, *or of any committee authorized by it to make a determination on its behalf,* pursuant to the provisions of this chapter, reviewed by the Supreme Court in accordance with the procedure prescribed by the court." (Emphasis supplied.)

The Judicial Council, in the Rules on Appeal, has implemented the provisions of this section. Subdivision (a) of rule 59 authorizes an aggrieved party to file in this court a petition

---

[5] Since the date of that order, respondent has amended the notice to show cause, but the charges against petitioner remain basically the same, and such differences as exist are not pertinent to our considerations herein.

"to review a decision of the Board of Governors of The State Bar recommending disbarment or suspension from practice of a member of The State Bar. . . ." Subdivision (b) of the same rule provides for a petition "to review *any other action* of the Board of Governors of The State Bar, *or of any committee appointed by it and authorized to make a determination* pursuant to the provisions of the State Bar Act. . . ." (Emphasis supplied.) The local administrative committee is, of course, such a committee. Not only has it been provided for in the Rules of Procedure adopted by the Board of Governors under the authority granted it by Business and Professions Code section 6086, but under the facts it was required by the Board of Governors "to make a determination." That determination is the very order which Brotsky presents here for review.

Had not both the Legislature and the Judicial Council intended that a committee determination be reviewable by this court before it has been reviewed by the Board of Governors, there would have been neither necessity nor reason for inclusion of the italicized portions of the statutes and rules. Furthermore, the language of section 6082 which includes a "person complained against" as one who may seek review would have been meaningless if it were not intended to provide for review prior to any final determination by the Board of Governors. Other sections of the same code provide for review of a final decision recommending suspension or disbarment.

Respondent argues, however, that we should, by interpretation, limit the right of review to orders made by a committee whose determinations are not ordinarily reviewed by the Board of Governors. The only committee suggested by it as falling within such a definition is its Committee of Bar Examiners. The legislation may not be interpreted in such a restricted manner. A person whose application for admission to practice has been denied is not a person "complained against" as that phrase is used in section 6082. Nor would such a limitation be consistent with the language of the Rules on Appeal which authorize review of a determination "of any committee appointed" by the State Bar.

There are sound policy reasons for limiting interim review of committee rulings and orders, in some situations where the Board of Governors affords the complainant an objective review before entering its order. But, under the facts of this case, such objective review by the Board of

Governors is impossible. By reason of the principal defense which Brotsky has pleaded, the Board of Governors is in the position of an adverse party. Its alleged action in condoning similar group practice in other fields forms one of the basic issues of the disciplinary proceeding. Moreover, in spite of its protestations that it cannot be considered such, the board has already acted as an adverse party. It has adopted interim resolutions in reply, and adverse, to petitioner's contention that certain matters should be made discoverable. It has suggested that the matter be presented to the committee by motion and affidavit, and when that suggestion was followed, it filed with the committee its formal opposition and motion to terminate. Such actions are consistent with an adversary proceeding. Subsequently, at its instance and request the committee made a determination in its favor and contrary to petitioner's contentions. It is that very determination of which petitioner now complains. Even though the Board of Governors retains the power to review such final order as the committee may make on the main issues of the disciplinary proceeding, there is no reasonable possibility that it will reverse its stand on the procedural issues of discovery. If the committee's determination in regard to discovery is to be ultimately reversed, it is far better that such reversal be accomplished now, while there is yet an opportunity to hold a proper hearing on the principal issues of the disciplinary proceeding. For that reason, the policy arguments urged by respondent are not here applicable.

Respondent cites several authorities holding that courts will not ordinarily review actions of an administrative board until such board has made a final order. But then it expressly admits that "proceedings before the State Bar are not before an 'administrative agency. . . .' " Thus the cited authorities are not in point. Admittedly this court has the power to grant such review as is sought herein. For the reasons stated, we are of the opinion that, even though this order is an interim order subject to review by the Board of Governors, it should be reviewable in this proceeding.

2. *Applicability of the discovery act to State Bar disciplinary proceedings*:

The second question presented is whether or not discovery is available, as a matter of right, to the parties in a disciplinary proceeding instituted under the State Bar Act. We are of the opinion that the newly adopted dis-

covery statutes (§§ 2016 to 2035, inclusive, of the Code Civ. Proc.) are applicable to such a proceeding.

Petitioner originally sought the answers to certain interrogatories, and the right to take depositions, for the purpose of pretrial discovery, and not in lieu of the testimony of witnesses who might not be present at the hearings. Subsequently the requests were amended to include a request for the production and inspection of documents, for the same purposes. In contending that he is entitled to pretrial discovery as a matter of right petitioner relies on the provisions of section 6052 of the Business and Professions Code, which is a portion of the article providing for the creation of and proceedings before local administrative committees. That section provides for the issuance of subpoenas, and closes with the provision that ''[d]epositions may be taken and used in the same manner as in civil cases.'' In addition, section 6085 guarantees an attorney, against whom the State Bar initiates disciplinary proceedings, a reasonable opportunity and right to defend against the charge by the introduction of evidence, to be represented by counsel, to examine and cross-examine witnesses, and ''to the issuance of subpoenas for attendance of witnesses to appear and testify or produce books and papers. . . .'' Respondent contends that these sections are permissive only, and do not bestow on the accused attorney an absolute right to take depositions. It argues that the Legislature, by declaring that the Board of Governors may provide the mode of procedure (Bus. & Prof. Code, § 6086) has indicated its intent that depositions are available only under such conditions as the board may provide in its Rules of Procedure. These conflicting contentions give rise to several interesting problems including: (1) the extent of respondent's rule making power when determined in connection with other provisions of the code; (2) interpretation of the permissive or mandatory nature of the provision that depositions ''may'' be taken; (3) interpretation of the legislative intent when adopting the discovery statutes without amendment of the language of section 6052; (4) the quasi-civil nature of a State Bar disciplinary proceeding; and (5) the possibly inconsistent positions which respondent took in the adoption of the discovery legislation and in amending its own rules of procedure. The parties have argued each of these propositions at great length. However, discussion of their contentions could only lead to a determination that the provisions of sections 6052 and 6085 of the Business and Professions Code do or do not grant an

absolute right to take depositions for the purpose of discovery in a disciplinary proceeding. The issues before us demand determination of whether or not a right exists to have discovery by deposition and other vehicles (including interrogatories and production of documents). It becomes unnecessary to discuss the impact of sections 6052 and 6085, for the reason that we find other grounds for holding that the entire discovery act is applicable to State Bar disciplinary proceedings.

 Respondent is not an administrative board in the ordinary sense of the phrase. It is *sui generis*. In disciplinary matters (and in many of its other functions) it proceeds as an arm of this court. If the Legislature had not recognized this fact, and made provision therefor, the constitutionality of those portions of the State Bar Act which provide for the admission, discipline and disbarment of attorneys could have been seriously challenged on the ground of legislative infringement on the judicial prerogative. Historically, the courts, alone, have controlled admission, discipline and disbarment of persons entitled to practice before them (6 Cal. Jur.2d, Attorneys at Law, § 9, p. 135; *People* v. *Turner*, 1 Cal. 143 [52 Am. Dec. 295]; *Barton* v. *State Bar*, 209 Cal. 677, 680-681 [289 P. 818]; *Brydonjack* v. *State Bar*, 208 Cal. 439, 443 [281 P. 1018, 66 A.L.R. 1507]). In adopting the statutory system now existing in California, the Legislature did not attempt to alter this basic concept. On the contrary, it provided for examination of candidates by the State Bar, followed by certification to the Supreme Court (Bus. & Prof. Code, div. 3, ch. 4, art. 4). The State Bar has no power to admit persons to practice law. On the contrary, its failure or refusal to certify is specifically made reviewable (*idem*, § 6066). In regard to discipline, including suspension and disbarment, the State Bar's position as an arm of the court is also clear. Although the common method of handling disciplinary matters is by a proceeding initiated by the State Bar, such manner is but one of three possible methods of disciplining attorneys, two of which are provided by the State Bar Act, and the third of which is inherent in the power of the courts to take independent action in matters of contempt. In addition to providing that the disciplinary proceedings set forth in article 5 of the act (State Bar proceedings) shall not be construed as limiting or altering the inherent power of the courts to disbar or discipline members of the bar (§ 6087), the Legislature provided an entire set of provisions for disbarment or suspension by the court either

on its own motion or on complaint made by a third party, all without any action by the State Bar (Bus. & Prof. Code, div. 3, ch. 4, art. 6). When articles 5 and 6 of the act are read together, it is clear that the Legislature quite properly considered the fact that a "self-governing bar" should have the opportunity of policing its own ranks, and bringing disciplinary matters to the attention of the courts in those cases where the courts did not have knowledge of the infractions, or where no other third party would be likely to make direct complaint to the court. It therefore provided a new method for *initiating* disciplinary proceedings. But in so doing, it provided that no disciplinary action taken thereunder shall be final without recourse to review by the Supreme Court. By section 6078 the Board of Governors of the State Bar may only *recommend* suspension or disbarment. Final action can only be taken by this court. While the board is given the power to take lesser disciplinary action on its own authority, as already pointed out such action is made reviewable by this court (§ 6082, *supra*).

 It follows that in matters of discipline and disbarment, the State Bar is but an arm of this court, and that this court retains its power to control any such disciplinary proceeding at any step. (See *Hogan* v. *State Bar,* 36 Cal.2d 807, 811 [228 P.2d 554], holding that the functions of the State Bar are advisory only.) The code provisions for mandatory and optional review by this court represent legislative recognition of this fact. In such proceeding, the State Bar acts much as a referee would act as a fact finder for this court. This court is not bound to accept the facts found by the State Bar. We exercise original jurisdiction, and may treat the determinations of respondent just as we would treat the findings or recommendations of a referee. Since respondent acts herein as an instrument of the courts, its activities should be governed by those statutory principles which have been enacted as rules of procedure for all courts. By whatever name a disciplinary proceeding may be called, whether an action or special proceeding, it is in essence the initial stage ·of an action in court. It follows that the discovery act, *in toto,* is applicable thereto.

 But, says respondent, the State Bar, and its local administrative committees, cannot possibly, under its existing rules, carry out all of the various provisions of the discovery act. It points particularly to Code of Civil Procedure section 2034 in which various penalties are prescribed for the willful

refusal to make discovery, and which confers certain discretion vested in the courts which may not be vested in the respondent or in any of its agencies. It undoubtedly is anomalous to assume that a local administrative committee (a creature of the Board of Governors) would first order the board to make discovery, and then attempt to discipline the board for its refusal to comply. It is also anomalous that the committee, thus empowered to discipline it, is a creature of the board. The board may not only give it express directions, but even legislate it out of existence. But these results do not flow from this decision. These results follow only because of the adoption by respondent of rule 14. In that rule it is provided that in taking depositions, when available to the parties, "the functions of the court shall be performed by the local administrative committee or the board, and the rights and duties of the respective parties in a civil case shall be exercised and performed by the respondent and examiner, respectively." It is not the function of this court to draft procedural rules for the State Bar. Respondent may adopt such rules (within the framework of the State Bar Act, and consistent with due process and the prerogatives of the courts) as it deems to be necessary and proper (Bus. & Prof. Code, § 6086). If the present rule 14 is unworkable respondent may and should make such amendments or changes as will be consistent with the principles enunciated in this opinion.

3. *The nature and extent to which discovery is available herein*:

In addition to claiming that petitioner is not entitled, as a matter of right, to discovery in any form, respondent raised objections to the specific demands of petitioner, and the local administrative committee sustained these objections.

The principal objection is that petitioner has called for the disclosure of matters which are confidential, and that come within the purview of privilege. It is true that many portions of the respondent's files are so privileged, and that, as a public body, it has a right and duty to determine when the public interest would suffer by their disclosure (Code Civ. Proc., § 1881, subd. 5; *Chronicle Publishing Co. v. Superior Court*, 54 Cal.2d 548 [7 Cal.Rptr. 109, 354 P.2d 637]). But that right exists only when the communication was made in confidence (§ 1881, *supra*), and a declaration that public interest would suffer by disclosure is of no avail when that prerequisite does not exist. Furthermore, privilege

which might otherwise have been available, may have been waived by subsequent publication. Although the resolutions of the board and the affidavit of respondent's secretary clearly indicate that *some* of the requested material is privileged, it is not clear that all of the material claimed as privileged meets the proper tests. In spite of that fact, the order of the local administrative committee states that "[t]he major part of the information sought by . . . [Brotsky] is claimed to be privileged. . . . We agree that the matters as to which privilege is claimed . . . would, if disclosed, cause the public interest to suffer and therefore should be confidential and privileged." That order makes no attempt to sort the privileged from the unprivileged, leaving the parties to speculate upon what portions of the material, if any, is not subject to the claim. Since the claim of privilege is an affirmative objection to a request for material otherwise discoverable, the burden of proving the same is on the party making that claim.[6]

 Here, both the claim and the order sustaining it are set forth in language so broad and sweeping that they place the burden of disproving privilege on the petitioner. Because we have held that petitioner is entitled to discovery as a matter of right, this proceeding must be eventually returned to the administrative committee for further action. Respondent may then make a more detailed showing of privilege, in which showing an attempt should be made to separate that which is privileged from that which is not. Then, and only then, can the committee make a determination based upon law and fact.

 Respondent also objected to the relevancy of the requested information. From the review of the facts set forth above, relevancy to the subject matter is quite apparent. It is further obvious that some of the requests tend to lead to admissible evidence. Either ground would justify discovery (*Greyhound Corp.* v. *Superior Court,* 56 Cal.2d 355 [15 Cal. Rptr. 90, 364 P.2d 266]). The showing made by respondent was much too general. Its contentions of irrelevancy go to the whole of petitioner's requests, rather than to the particular. For this reason, alone, the broad and sweeping order made by the local committee was too broad. By reversing that

---

[6]These proceedings took place prior to the 1960 amendment to Code of Civil Procedure section 2030, which amendment may have had the effect of shifting the burden to some extent in the case of interrogatories, but which does not appear to have affected the other forms of discovery.

order we do not foreclose respondent from making a further showing on this issue, if it can.

Respondent also complained that the requests for disclosure, as presented by petitioner, were unduly broad, uncertain and burdensome, and that the order under review should be viewed as a protective order. We are inclined to agree that some of the requests are unduly broad, but we do not find them uncertain. We have no trouble understanding the nature of the requests. Upon the remand, if petitioner desires to redraft his demands or motion in order to clarify the same, he may do so. But if he wishes to stand on the proceedings as they now exist, there is no reason why respondent should not reply to the requests for disclosure insofar as it is able to understand the same. If, by reason of lack of clarity in his demands, petitioner gets less than he desired, the fault would be his, and he will be in no position to complain.

The claim that the requests are burdensome is predicated upon the fact, set forth in the secretary's affidavit, that respondent keeps no central file of disciplinary proceedings from which the particular information which petitioner requests may be extracted without review of all proceedings. In other words, respondent's files are not indexed. But it must keep files and records of all disciplinary proceedings, for such is incumbent upon it (Bus. & Prof. Code, § 6080).

Under the provisions of the discovery statutes respondent is given two clear alternatives. If the search of its own records, without benefit of index, would be found burdensome, it has the option of directing petitioner to the place where such records are maintained, and requiring him to make the search (Code Civ. Proc., § 2030, subd. (c)). But, of course, respondent does not wish to turn petitioner loose in its files for the obvious reason that portions of those files are confidential. If the confidentiality which it claims prevents its taking advantage of the alternative which has been provided for its benefit, then it must suffer the burden.

In addition to its other contentions, respondent urges that this court, as a matter of general policy, should not undertake, under its inherent powers, "to formulate broad rules of discovery or deposition practice in State Bar disciplinary matters." If by this argument respondent means that this court should not usurp respondent's rule making power, it is a sound argument. If it means that we should not use this interim review as a vehicle to announce general rules

of law regarding the nature and extent of discovery as applied to State Bar proceedings, it is incorrect, for reasons already pointed out.

The matter is referred to the State Bar of California for further proceedings consistent with this opinion.

SCHAUER, J., Dissenting.—The majority opinion, at the outset, has phrased its definition of the "two principal questions involved"; i.e.:

"(1) Is review available to petitioner at this stage of the disciplinary proceedings?

"(2) Are discovery procedures available to the parties in such a proceeding?"

I find it unnecessary, and as a matter of judicial policy undesirable, to undertake at this stage of the proceedings to spell out all the definitive answers within the broad scope of the majority's questions.

My approach to the problem starts on a plateau of recognition that (Bus. & Prof. Code, § 6001) "The State Bar of California is a public corporation . . . [endowed with the power to] do all . . . acts . . . necessary or expedient for the administration of its affairs and the attainment of its purposes [and that]

"No law of this State restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies . . . shall be applicable to the State Bar, unless the Legislature expressly so declares." Thus the state has formally recognized that the State Bar is a public corporation *sui generis*.

I do not find that article III, chapter III, title III, part IV of the Code of Civil Procedure (Depositions and Discovery, added by Stats. 1957, ch. 1904, p. 3322) has been expressly declared by the Legislature to be applicable to proceedings before the State Bar. I do find that the Legislature *has* expressly declared that (Bus. & Prof. Code, § 6010) "The State Bar is governed by a board known as the board of governors of the State Bar" and that (*id.*, § 6025) "the board may formulate and declare rules and regulations necessary or expedient for the carrying out" of its functions. Furthermore, in this connection, it is noted that section 6085 provides that "Any person complained against shall be given reasonable notice and have a reasonable opportunity and right:

"(a) To defend against the charge by the introduction of evidence.

"(b) To be represented by counsel.

"(c) To examine and cross-examine witnesses.

"He shall also have the right to the issuance of subpoenas for attendance of witnesses to appear and testify or produce books and papers, *as provided in this chapter*" (i.e., the State Bar Act, ch. 4 of div. 3 of the Bus. & Prof. Code); that section 6086, dealing with "Rules of procedure by board," specifies that "The board of governors, *subject to the provisions of this chapter,* may by rule provide the mode of procedure in all cases of complaints against members." (Italics added.) Also significant in construing the scope of, and the intended limitations on, the statutory powers granted to the State Bar, article V (§ 6087) of the State Bar Act concludes "Nothing in this chapter shall be construed as limiting or altering the powers of the Supreme Court of this State to disbar or discipline members of the bar as this power existed prior to the enactment of Chapter 34 of the Statutes of 1927, relating to the State Bar of California."

It has been noted that the State Bar is a public corporation *sui generis.* Not only is it by statute entitled to be recognized as an entity separate and apart from that of any other body politic of the state, but the character of the work, and the nature of the obligations and duties, of all members of that profession who constitute the State Bar, combine to make it unique. We need only read the duties of an individual attorney as enunciated in Business and Professions Code section 6068, and take notice of facts known to all of us, to perceive that members of the Board of Governors of the State Bar (with a total membership of some 22,000 lawyers) are charged with a task which is monumental in size and multitudinous in detail but which, nevertheless, must be handled in such a manner as to preserve inviolate, to the highest degree compatible with essential functioning, the confidentialities of its records.

Deposition and discovery procedures were compiled and enacted primarily in contemplation of ordinary civil trials. Court proceedings are fundamentally public proceedings. By contrast, proceedings by and before the board of governors of the State Bar, and most of their committees, are basically private and confidential. Section 6049 (Bus. & Prof. Code) provides that "In the conduct of investigations and upon the trial and hearing of all matters, the board and any committee having jurisdiction, including the examining committee, may:

"(a) Take and hear evidence pertaining to the proceeding.

"(b) Administer oaths and affirmations.

"(c) Compel by subpoena, the attendance of witnesses and the production of books, papers and documents pertaining to the proceeding."

But there is no directive either in section 6049, or in section 6085, quoted *supra,* that such proceedings be public. Code of Civil Procedure section 124 provides (with exceptions not material here) that "The sittings of every court of justice shall be public," but there is no contention that such general legislation shall in any case override the express provision in section 6001 of the Business and Professions Code that "No law of this State restricting, or prescribing a mode of procedure for the exercise of powers of state public bodies or state agencies . . . shall be applicable to the State Bar."

Certainly a member of the Bar charged with misconduct is entitled to a fair hearing. This necessarily entails—and I think the board of governors would be the last to challenge—reasonable opportunity to require the attendance of and to present witnesses, and to produce or require the production of documentary evidence. But I think also that in a proceeding wherein it becomes reasonably necessary to produce data claimed to repose only in confidential records of the State Bar, it is peculiarly desirable that the methods and means by which the ultimate essentials of such data can be made available shall in the first instance be worked out by the board of governors and not be held controlled by the general discovery procedures.

In *Security-First National Bank* v. *Franchise Tax Board* (1961) 55 Cal.2d 407, 418, et seq. [11 Cal.Rptr. 289, 359 P.2d 625], plaintiffs claimed that they were denied procedural due process because they were not permitted to examine certain documents which were considered by the Franchise Tax Commissioner in setting the bank tax rate. The information contained in the documents was tabulated in statistical form and transcripts of the returns of various corporations were made which contained the property tax and net income figures, with serial numbers instead of names being used to designate the corporations. At hearings held by the commissioner the banks were permitted to inspect the transcripts and the statistical material, and members of the commissioner's staff, having possession of the original returns, answered questions as to their contents without disclosing the names of the corporations. (See Stats. 1943, ch. 352,

p. 1464.) We sustained the Franchise Tax Board. It is of course true that the cited case may be broadly distinguished from that now before us but it suggests that if statistics from confidential records are really required they can be produced without violating confidentiality. It also lends support to leaving with the State Bar the task of completing the proceeding before we undertake to review it.

We do not ordinarily review the mesne proceedings of a trial court before judgment has been entered; the same is true as to proceedings before the Industrial Accident Commission and the Public Utilities Commission. To review the actions of a committee of the State Bar which actions would inevitably be reviewed by the board before the making of a recommendation to this court seems somewhat akin to reviewing the recommendations of an Industrial Accident Commission's referee before the commission had acted.

For the reasons stated I do not reach the full scope of the questions designated by the majority. I do conclude that (1) the statutory discovery procedures are not shown to have been expressly made applicable to, and hence should not, as such, be held to govern, proceedings before the State Bar; and (2) I would refuse review until final, or at least more determinative, action has been taken by the board.

McComb, J., concurred.

Respondent's petition for a rehearing was denied March 14, 1962. Schauer, J., and McComb, J., were of the opinion that the petition should be granted.