[No. E000734. Fourth Dist., Div. Two. Dec. 13, 1985.]

AGRICULTURAL LABOR RELATIONS BOARD,
Plaintiff and Appellant, v.
RICHARD A. GLASS CO., INC., Defendant and Respondent;
UNITED FARM WORKERS OF AMERICA, AFL-CIO,
Intervener and Respondent.[1]

[1]The United Farm Workers (UFW) was a party to the original proceedings by an order granting intervention. No notice of appeal was filed by the UFW. The parties agreed at oral argument the UFW could participate.

704

**COUNSEL**

Daniel G. Stone and Michael E. Hersher for Plaintiff and Appellant.

David E. Smith for Defendant and Respondent.

Dianna Lyons, Ellen J. Eggers, Daniel A. Garcia, Wendy Sones and Ira L. Gottlieb for Intervener and Respondent.

## OPINION

**RICKLES, J.**—The Agricultural Labor Relations Board (ALRB) appeals from an order of the superior court denying an application for enforcement of subpoenas duces tecum and subpoenas ad testificandum. The superior court gave five reasons for denying the ALRB's application: (1) the administrative law judge (ALJ) was without jurisdiction to modify his previous order of enforcement; (2) the information sought in the subpoenas duces tecum constitutes trade secrets; (3) the equities mandate protection of the trade secrets; (4) respondents did not waive objections to supplying trade secret information; and (5) the UFW waived the right to any information which related to activities conducted upon land owned by third parties for whom the company is the shipper of agricultural products or had a contract to harvest fruit. The ALRB contends these findings are in error. We agree.

### FACTS

Richard A. Glass Co., Inc. (Glass) was engaged in the growing, harvesting and packing of citrus crops in Riverside County. The UFW was certified as the bargaining representative for Glass agricultural workers. The UFW and Glass entered into a collective bargaining agreement covering the terms and conditions of employment for Glass agricultural workers. The terms of the contract required Glass to provide various information to the UFW concerning its agricultural operations.

Sometime in November 1979, DMB purchased all the assets of Glass. DMB Packing, Inc. (DMB), doing business as Glass, entered into a collective bargaining contract with the UFW covering the DMB agricultural workers. This contract required DMB to provide information to the union regarding its agricultural operations.

General counsel for the ALRB filed an unfair labor practice complaint against Glass alleging the company unlawfully changed its citrus harvesting operations. The complaint alleged Glass: reduced harvesting services; eliminated bargaining unit work; made these changes unilaterally without notice or bargaining with the UFW; and had not recalled any eliminated bargaining unit workers.

General counsel contends services provided by Glass to customer/growers have remained the same. Citrus grown on the ranches by those growers is still handled, marketed, and shipped through the Glass packing shed. Machinery, equipment, bins, and other items necessary to the harvesting operation are still supplied by Glass. Glass continues to finance the harvesting costs. The same persons, namely Glass supervisors, still direct the operations of the harvesting crews, which Glass now claims are hired directly by

the growers. The business relationships between Glass and its growers remain essentially unchanged. Changes in the *form* of doing business do not change the bargaining obligations of the UFW and Glass. Glass remains the employer of the harvesting crews. General counsel further contends all of the alleged changes in the harvesting operations constitute the unlawful subcontracting arrangement and Glass has refused to provide any information to the UFW about the changes in the harvest operations.

In an attempt to prove its case against Glass, general counsel subpoenaed Glass employees, Glass business records and business records of Glass' growers and their custodians to appear and testify at the administrative hearing. All of the subpoenaed parties have refused to provide any of the subpoenaed information or to testify. This refusal provoked the instant subpoena enforcement litigation.

### PROCEDURAL BACKGROUND

In December of 1979, the UFW filed an unfair labor practice charging that respondent Glass had violated its duty to bargain in good faith with the UFW, the board certified representative of Glass employees. The UFW claimed that: (1) Glass had failed to notify the UFW of a change in the company's arrangement for harvesting citrus for Glass packing sheds; (2) the change had resulted in the elimination of bargaining unit work; and (3) Glass had refused to bargain over the change in its harvesting arrangement. Approximately a year later, a second charge was filed alleging Glass violated its duty to bargain by refusing to provide its workers' union with information regarding the unilateral changes alleged in the earlier charge.

In September of 1982, the ALRB's regional director issued an amended administrative complaint against Glass and DMB, the successor to Glass, alleging the two companies had eliminated, diverted, and subcontracted bargaining unit work without notice to or bargaining with the UFW. The complaint further alleged Glass and DMB had unlawfully refused to provide information to the union in connection with changes in the terms and conditions of employment of the members of the bargaining unit in violation of section 1153, subdivisions (a), (c), and (e) of the Agricultural Labor Relations Act (ALRA).[2] This administrative complaint was amended in November 1982, adding as additional respondents three former California citrus growers: Rancho Marco de Oro, Rancho Oro Verde, and Rancho de Diamantes.

On September 13, 1982, general counsel served a number of subpoenas duces tecum and subpoenas ad testificandum on Glass/DMB, and a number

---

[2]Unless otherwise indicated, all section references in this opinion are to the Labor Code.

of individuals or business entities alleged to be agents or alter egos of Glass/DMB. General counsel alleged the subpoenaed information would demonstrate Glass had eliminated bargaining unit work through unilateral subcontracting; Glass had initiated the change in harvesting arrangements so that, beginning with the 1979 harvest, labor would be provided through labor contractors allegedly hired directly by growers rather than Glass; Glass had previously deducted the harvesting labor costs from the growers' sales proceeds; and even though growers now ostensibly hired their own workers, Glass continued to finance the labor costs for these growers. The persons and entities were ordered to appear to testify and produce documentary records at the unfair labor practice hearing involving Glass/DMB.

On September 20, 1982, Glass/DMB filed petitions to revoke the subpoenas duces tecum pursuant to section 1151, subdivision (a),[3] and California Administrative Code, title 8, section 20250, subdivision (f).[4] The petitions to revoke were heard on October 7, 1982, by the ALJ conducting the

---

[3]Section 1151, subdivision (a), provides: "For the purpose of all hearings and investigations, which, in the opinion of the board, are necessary and proper for the exercise of the powers vested in it by Chapters 5 (commencing with Section 1156) and 6 (commencing with Section 1160) of this part:

"(a) The board, or its duly authorized agents or agencies, shall at all reasonable times have access to, for the purpose of examination, and the right to copy, any evidence of any person being investigated or proceeded against that relates to any matter under investigation or in question. The members of the board or their designees or their duly authorized agents shall have the right of free access to all places of labor. The board, or any member thereof, shall upon application of any party to such proceedings, forthwith issue to such party subpoenas requiring the attendance and testimony of witnesses or the production of any evidence in such proceeding or investigation requested in such application. . . . Any member of the board, or any agent or agency designated by the board for such purposes, may administer oaths and affirmations, examine witnesses, and receive evidence. Such attendance of witnesses and the production of such evidence may be required from any place in the state at any designated place of hearing."

[4]California Administrative Code, title 8, section 20250, subdivision (f), provides: "(f) Any person on whom a subpoena or a notice to appear (described in subsections (d) and (e)) is served who does not intend to comply shall, within five days after the date of service, petition in writing to revoke the subpoena or notice. The petition to revoke shall contain a statement of the grounds for revocation and shall have attached a copy of the subpoena or notice. The petition to revoke shall be served as provided in Section 20430 by or on behalf of the person seeking revocation upon the party at whose request the subpoena was issued or who issued the notice. If the petition to revoke is filed after the issuance of a complaint but prior to the prehearing conference, the petition shall be filed with the executive secretary. A copy shall be served on the party issuing the subpoena or notice in compliance with Section 20430. A petition to revoke filed at or after the prehearing conference or during the hearing shall be filed with the administrative law judge who may rule on the matter. If the subpoena has been served less than five days before the hearing, the petition to revoke is due on the first day of the hearing except that the administrative law judge, upon a showing of good cause, may grant up to five days for filing a petition to revoke. For a subpoena issued during the hearing, any petition to revoke shall be due at the time specified in the subpoena for compliance unless further time up to five days is granted by the administrative law judge."

unfair labor practice hearing. On October 13, 1982, the ALJ granted enforcement of the subpoenas after limiting their scope. Glass/DMB contended at this hearing the identities of the growers for whom the company packed were trade secrets and protected by the trade secret privilege. (Evid. Code, § 1060.)[5] The ALJ ordered Glass/DMB to produce the information for *in camera* inspection before ruling on the question of trade secret privilege. Glass/DMB refused to comply with the ALJ's *in camera* inspection order of the subpoenaed documents.

On October 20, 1982, the ALJ filed a declaration with the ALRB stating Glass/DMB refused to comply with the *in camera* inspection order, and wished to contest the validity of the ALJ's order in superior court. The ALJ recommended the ALRB issue an order seeking enforcement of the subpoenas pursuant to section 1151, subdivision (b).[6]

On October 26, 1982, the ALRB issued an order directing compliance with the ALJ's October 13, 1982, order and approving enforcement of the subpoenas in superior court pursuant to section 1151, subdivision (b).

On November 9, 1982, general counsel filed an application for an order requiring obedience to certain subpoenas duces tecum together with points and authorities in support of the application. (Agricultural Labor Relations Board v. R.A. Glass Co. et al., Indio 86681.)

On December 20, 1982, the superior court issued the following minute order denying the application for an order requiring obedience to the subpoenas:

"Application for order requiring obedience to subpoena duces tecum, denied.

"The administrative law officer ruled that specified information was to be delivered to him in camera. He had not decided on the ultimate question. (Line 21 page 61, transcript of pre-hearing conference, exhibit H).

---

[5]Evidence Code section 1060 provides: "If he or his agent or employee claims the privilege, the owner of a trade secret has a privilege to refuse to disclose the secret, and to prevent another from disclosing it, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice."

[6]Section 1151, subdivision (b), provides: "In case of contumacy or refusal to obey a subpoena issued to any person, any superior court in any county within the jurisdiction of which the inquiry is carried on, or within the jurisdiction of which such person allegedly guilty of contumacy or refusal to obey is found or resides or transacts business, shall, upon application by the board, have jurisdiction to issue to such person an order requiring such person to appear before the board, its member, agent, or agency, there to produce evidence if so ordered, or there to give testimony touching the matter under investigation or in question. . . ."

"It is the opinion of this Court that in making this ruling the administrative law officer exceeded his authority. Evidence Code Sections 905, 914 and 915 section 1151B Labor Code.

"Attorney for Respondent to prepare formal order."

Following this order by the superior court, general counsel asked the ALJ to recommend to the ALRB that the ALRB (1) vacate its October 26, 1982, order requiring production of subpoenaed materials *in camera,* and (2) issue a new order overruling Glass/DMB's claim of trade secret privilege and order production of the subpoenaed material.

On March 9, the ALJ filed a recommendation for enforcement of subpoenas and accompanying declaration with the ALRB. On May 6, 1983, the ALRB issued an order granting the ALJ's request for enforcement of subpoena duces tecum. The ALRB found the subpoenaed items did not constitute trade secrets and were not privileged. The ALRB further found even if the subpoenaed information included trade secrets, the concealment of the information in this instance would work an injustice.[7]

On June 7, 1983, the ALRB denied Glass/DMB's motion for reconsideration of its May 6, 1983, order.

On June 26, 1983, general counsel and counsel for Glass/DMB entered into a stipulation providing: (1) 21 persons had been duly subpoenaed to testify on June 22, 1983, and continuing thereafter until the taking of their testimony was completed; (2) if called to testify, said persons would refuse to answer any questions on any matter or subject relevant to the third amended consolidated complaint; (3) the refusal to answer would be based on the assertion of a trade secret privilege; (4) the ALJ would direct the witnesses to testify; and (5) said persons would still refuse to testify.

On September 6, 1983, general counsel filed an application for order requiring obedience to subpoenas duces tecum and subpoenas ad testificandum, together with supporting exhibits and points and authorities. Glass/DMB filed its answer on October 13, 1983. The day of the hearing on the ALRB's application, the UFW moved for leave to intervene. This motion was granted. The application was argued and submitted to the court for a ruling.

---

[7]We presume the ALRB was attempting to comply with Evidence Code sections 914, subdivision (a), 915, subdivision (a), and 1060.

The court issued a minute order denying the ALRB's application for enforcement of the subpoenas and directed counsel for Glass/DMB to prepare a formal order. The formal order was prepared, signed and served on the ALRB.[8] The ALRB filed timely notice of appeal from this order.

## MOOTNESS

■ An initial question of mootness arises because the ALRB has tried this case in its entirety without the subpoenaed information. Even though the need for the subpoenaed information has expired, the issue of the right of the ALRB's access to trade secret information by subpoena remains. Because this issue is one of continuing public interest and likely to recur in the future, it should not be ignored by relying on the mootness doctrine. (*Daly* v. *Superior Court* (1977) 19 Cal.3d 132, 141 [137 Cal.Rptr. 14, 560 P.2d 1193]; *United Farm Workers of America* v. *Superior Court* (1975) 14 Cal.3d 902, 906-907 [122 Cal.Rptr. 877, 537 P.2d 1237].)

## THE MERITS

This case involves the authority of the ALRB to compel the attendance of witnesses and the production of documents in an administrative hearing where a claim of trade secret privilege has been asserted. The trial court determined the ALRB's subpoena power was limited because: (1) The ALJ and the ALRB were without jurisdiction to modify a previous related order

---

[8]"The Petition of the AGRICULTURAL LABOR RELATIONS BOARD for an Order Requiring Obediences To Certain Subpoenas Duces Tecum and Subpoenas Ad Testificandum, having regularly come before the Court on October 21, 1983, the Petitioner, appearing by and through Counsel for General Counsel, LUPE MARTINEZ, the Respondents, appearing by and through their attorneys, SMITH AND HALL, and DAVID E. SMITH, and the Intervenor, UNITED FARM WORKERS OF AMERICA, appearing by and through its attorney, IRA GOTTLIEB, and after oral arguments and consideration of evidence and Memorandum of Points and Authorities having been submitted.

"IT IS HEREBY ORDERED that the Petition of the AGRICULTURAL LABOR RELATIONS BOARD be and the same is hereby denied. In denying the Petition, the Court finds that the reasons set forth in the Respondent's Memorandum of Points and Authorities and supplement thereto form the basis for said denial, including the following:

"1. The Administrative Law Judge was without jurisdiction to modify his previous order of enforcement;

"2. The information sought in the subpoenas constitutes trade secrets;

"3. The equities mandate protection of the trade secrets;

"4. Respondents did not waive objections to supplying trade secret information; and,

"5. The United Farm Workers waived the right to any information which related to activities conducted upon land owned by third parties for whom the company is the shipper of agricultural products or had a contract to harvest fruit.

"Dated: December *16*, 1983.

"[s] Warren E. Slaughter

"WARREN E. SLAUGHTER

Judge of the Superior Court"

of enforcement; (2) of the trade secret privilege; and (3) of the UFW's waiver of the right to subpoenaed information.

■ We begin our analysis by pointing out the scope of judicial inquiry by the trial court is quite limited in subpoena enforcement proceedings under section 1151, subdivision (b). (*Agricultural Labor Relations Bd.* v. *Laflin & Laflin* (1979) 89 Cal.App.3d 651, 663 [152 Cal.Rptr. 800].)

All of the grounds relied on by the trial court in denying enforcement of the subpoenas requested by the ALRB involve questions of law. The question of jurisdiction implicates the application of the legal doctrine of res judicata. (*Consumers Lobby Against Monopolies* v. *Public Utilities Comm.* (1979) 25 Cal.3d 891, 900-902 [160 Cal.Rptr. 124, 603 P.2d 41].) What constitutes a trade secret is a question of law. (*Uribe* v. *Howie* (1971) 19 Cal.App.3d 194, 207 [96 Cal.Rptr. 493].) The waiver of the UFW in advance of the controversy depriving the ALRB of the evidence is a question of law. (See *Mannix* v. *Superior Court* (1933) 133 Cal.App. 740, 743 [24 P.2d 507].)

■ We need not give deference to, nor are we bound by, the trial court's determination of questions of law.

## I

■ ■ The trial court erroneously determined the ALJ (ALRB) was without jurisdiction to modify his previous order of enforcement.

It is difficult to determine from the record and the briefs whether this order was based on the ALRB's lack of authority to reissue its order authorizing enforcement of subpoenas or on the doctrine of res judicata.

The ALRB's original petition to the trial court requesting enforcement of subpoenas involved *in camera* inspection of the documents. The trial court determined the ALJ (the ALRB) was without authority to order an *in camera* inspection. The trial court's denial of the enforcement of subpoenas under these circumstances does not deprive the ALRB of jurisdiction to reissue and request enforcement of the subpoenas after removing the offensive requirement of an *in camera* inspection. We have not been cited any authority, nor can we find any, upholding the trial court's determination the ALRB was without jurisdiction to reissue subpoenas after removal of a technical impediment to their enforcement.

The briefs suggest the trial court's order could possibly be based on some

application of the doctrine of res judicata. We are not sure the doctrine of res judicata entered into the trial court's ruling, but we are sure it would not support such a ruling.

The ALJ recommended enforcement of the subpoenas and provided for *in camera* inspection of the documents. Glass/DMB was ordered by the ALRB to comply with the subpoenas and refused to comply. An application was filed in the trial court for enforcement of the subpoenas. The trial court denied the application on the grounds the ALJ lacked authority to order an *in camera* inspection of the documents. The trial court did not reach the merits of the application for enforcement.

The ALJ requested the ALRB reissue the subpoenas and order Glass/DMB to comply without an *in camera* inspection. The ALRB reissued the subpoenas ordering Glass/DMB to comply. Glass/DMB refused to comply. The ALRB applied for an enforcement order and the trial court denied this order.

The doctrine of res judicata bars reassertion of claims in matters where a final order of judgment has issued on the merits of a case. An order enforcing a subpoena duces tecum is interlocutory and not final. (*Gue* v. *Dennis* (1946) 28 Cal.2d 616, 617 [170 P.2d 887].) A denial of an application for an order enforcing a subpoena duces tecum on a technical basis is not a final order as to the merits of the subpoena. The doctrine of res judicata is not applicable in this instance and does not bar reapplication for an order enforcing a subpoena duces tecum where the technical deficiency has been removed. (See *Hennigan* v. *United Pacific Ins. Co.* (1975) 53 Cal.App.3d 1, 6 [125 Cal.Rptr. 408]; *Lopez* v. *Larson* (1979) 91 Cal.App.3d 383, 392 [153 Cal.Rptr. 912].)

The ALRB's order requesting enforcement of the subpoenas was clearly within its authority and not barred by the doctrine of res judicata.

## II

The trial court's determination the information requested from Glass/DMB by subpoena constituted trade secrets and the equities mandated protection was also erroneous.

Glass/DMB makes no claim the records sought were not relevant to the administrative inquiry. Nor does Glass/DMB claim the subpoena as limited by the ALJ was overbroad, unreasonably burdensome or oppressive. Glass/DMB did not request a protective order. Glass/DMB simply refused to comply and produce the requested information. Because Glass/DMB failed

to contest the relevancy of the information sought, the burden is on Glass/ DMB to prove a trade secret privilege in fact exists and to show how disclosure would injure the business. (*Brotsky* v. *State Bar* (1962) 57 Cal.2d 287, 303 [19 Cal.Rptr. 153, 368 P.2d 697, 94 A.L.R.2d 1310]; *Western Mass. Elec. Co.* v. *N.L.R.B.* (1st Cir. 1978) 589 F.2d 42, 47; *Ingalls Shipbuilding Corp.* (1963) 143 N.L.R.B. 712 [53 L.R.R.M. 1406, 1409].)

We are of the opinion that Glass/DMB failed to meet its burden proving either the existence of trade secrets or how disclosure would injure its business. The record before the ALRB and the trial court on this issue consists of two declarations, one by Anthony Ash, general manager of Glass/DMB, and the other by David E. Smith, attorney for Glass/DMB. Ash refers to only one type of information that he considers a trade secret. This information consists of the costs of Glass/DMB's processes and the price Glass/ DMB charges for its services. Ash contends if the competition knew Glass/ DMB's costs it could underbid Glass/DMB and attract Glass/DMB's customers. This statement is conclusionary and unsupported by factual data. There is no allegation this information is not a matter of common knowledge among the citrus growers or readily obtainable on the open market. The affidavit did not demonstrate the probability the information would be compromised, nor the method, manner or circumstances by which the information would reach the competitors. The affidavit of David E. Smith adds nothing of a factual nature to the affidavit of Ash.

Moreover, even if a trade secret privilege existed, the trade secret claimant has the burden of showing why the trade secret should be protected. The trade secret claimant is required to furnish the court with sufficient information for the court to balance whether the interest involved in the trade secret's value to Glass/DMB outweighed the ALRB's need for the information. Neither the court nor the ALRB was furnished with sufficient information to balance these interests. (Evid. Code, § 1060.) The record does support the conclusion the allowance of the privilege would tend to conceal fraud and work an injustice on the agricultural workers.

Finally, even if we concluded the trade secret privilege existed, the burden would still be on Glass/DMB to show why a protective order would not solve the problem. There is no evidence indicating a protective order would not have protected Glass/DMB's alleged trade secrets.

### III

The trial court's finding the UFW could waive the ALRB's right to determine what evidence the ALRB will or will not hear cannot be supported factually or legally.

The evidence is insufficient to support the finding the UFW contractually waived its rights to information that Glass/DMB would unilaterally change its harvesting arrangement to the detriment of covered agricultural workers.

Even if the evidence established the UFW contractually waived its rights to information from Glass/DMB, any such waiver would not affect the ALRB's right to the information. The ALRB is for the vindication of public, not private, rights. (*Nish Noroian Farms* v. *Agricultural Labor Relations Bd.* (1984) 35 Cal.3d 726, 736 [201 Cal.Rptr. 1, 677 P.2d 1170].) Because the continued economic health of agricultural workers in this state is of public importance, any agreement between the UFW and Glass/DMB to restrict the evidence the ALRB may receive in protecting an agricultural worker's interest is void as against public policy. (See *Mannix* v. *Superior Court, supra,* 133 Cal.App. 740, 743.)

### DISPOSITION

The trial court's order refusing enforcement of the subpoenas duces tecum and ad testificandum requested by the ALRB is reversed.

Morris, P. J., and Kaufman, J., concurred.