**The UPJOHN COMPANY, a Delaware Corporation, Plaintiff,**

v.

**HYGIEIA BIOLOGICAL LABORATORIES, a California Corporation, and Dale M. Wallis, an individual, Defendants.**

**Civ. No. S–93–293 WBS/GGH.**

United States District Court,
E.D. California.

April 28, 1993.

Karl A. Limbach, Carrie L. Walthour, Maria S. Cefalu, and W. Patrick Bengtsson, Limbach & Limbach, San Francisco, CA, for plaintiff the Upjohn Co.

Carroll, Burdick & McDonough, James B. Clapp and Joanna R. Mendoza, Sacramento, CA, for defendants and counterclaimants Hygieia Biological Laboratories and Dale M. Wallis.

### ORDER

HOLLOWS, United States Magistrate Judge.

Previously pending on this court's law and motion calendar for April 8, 1993, was defendant's (Hygieia) motion to quash plaintiff's (Upjohn) subpoenas duces tecum served on third parties California Department of Food and Agriculture (CDFA) and the United States Department of Agriculture (USDA). The parties filed a stipulation pursuant to E.D.Cal.L.R. 251. Following oral argument on Hygieia's motion, and pursuant to Hygieia's request, the court ordered simultaneous briefing on the issue of whether Upjohn's retained outside trial counsel should have access during discovery to materials containing alleged trade secrets. In their supplemental brief, Hygieia conceded the issue, but raised additional issues regarding the relevancy of the material requested by the subpoenas duces tecum, and requested appointment of a special master. By order filed April 19, 1993, the court requested additional briefing calling for Upjohn's response to Hygieia's relevancy arguments and request for a special master, and Hygieia's comments regarding the logistics for appointment of a special master.

Having reviewed the parties' stipulation, pleadings, supplemental briefing, and supporting documents, and heard oral argument, the court now issues the following order.

### BACKGROUND

At the heart of this controversy are two veterinary vaccines. The first, known as the "J–5 TC (tissue culture)" vaccine, was developed by Poultry Health Laboratory, Inc. (PHL) during defendant Dale Wallis' tenure there as staff veterinarian, a member of the Board of Directors, and owner of one-sixth of the stock. The vaccine prevents coliform mastitis, a bacterial infection, in dairy cows. PHL subsequently entered into negotiations with Upjohn Company for purchase of the "J–5 TC" vaccine, and Wallis served during part of this time as principal negotiator for PHL. Full licensure of the vaccine was obtained by PHL from CDFA in December, 1991, and Upjohn entered into a Purchase Asset Agreement with PHL in January, 1992, to acquire exclusive rights to the vaccine.

Wallis left PHL in July, 1991, and in October, 1991, began working for defendant Hygieia Biological Laboratories, a newly formed corporation whose principal director is defendant's husband, James Wallis. In July, 1992, defendants obtained full licensure from

CDFA for a "J–5 E. coli" vaccine, which prevents mastitis in cows, goats and swine.

Upjohn contends that the two vaccines are identical, and that Hygieia should be held to the noncompetitive/exclusive rights agreement Upjohn entered into with PHL. Hygieia contends that the vaccines are distinct, and that Upjohn, a larger company with greater resources, is unfairly seeking to establish a monopoly on the J–5 vaccine market. Neither vaccine has yet been licensed by the USDA. Hygieia and PHL/Upjohn are assertedly the only two competitors in the J–5 vaccine market.

Upjohn filed its complaint on February 24, 1993, alleging that Hygieia misappropriated and converted trade secrets rightfully belonging to Upjohn, and that Hygieia's actions have delayed the licensure of the "J–5 TC" vaccine by the USDA.[1] Hygieia filed a counterclaim on March 15, 1993, alleging, inter alia, unlawful restraint of trade.[2]

On March 11, 1993, Upjohn served subpoenas duces tecum on CDFA and USDA, seeking production of requested documents on April 12, 1993, in Sacramento and Washington, D.C., respectively. As originally drafted, the subpoenas sought all documents and things relating to Hygieia's application to license, register, or manufacture any veterinary vaccine, including any "E. coli antigen-based" vaccine. (Subsequently, in response to Hygieia's relevancy arguments, Upjohn has agreed to limit the subpoenas to material "referring or relating to any J–5 Vaccine or any E. coli antigen-based vaccine for mastitis, rather than any 'veterinary vaccine' as presently called for." Upjohn's Supplemental Brief of Apr. 23, 1993, p. 3.)

Upon receiving a copy of the subpoenas, Hygieia's counsel contacted Upjohn's counsel and requested that the subpoenas be withdrawn. Counsel for Hygieia suggested that neutral parties within the state and federal agencies could confidentially evaluate the vaccines and provide the parties with their conclusions whether the vaccines are similar or dissimilar. Upjohn's counsel rejected the proposal, and refused to withdraw the subpoenas, but offered to enter into a protective order to protect the confidentiality of the information obtained by the agencies, as well as any information provided by the parties pursuant to additional discovery. Hygieia declined to enter into negotiations for a protective order, and filed the instant motion to quash, also seeking Rule 11 sanctions. Third party subpoenants, CDFA and USDA, have not filed any objections to the subpoenas.

Upjohn filed its opposition brief, Hygieia its reply brief. The parties subsequently filed a Stipulation Regarding Discovery Disagreement pursuant to E.D.Cal.L.R. 251. In addition, the parties have each filed two supplemental briefs in response to the aforementioned requests by this court.

*DISCUSSION*

Upjohn's subpoenas duces tecum were served pursuant to Fed.R.Civ.P. 45, which provides in pertinent part:[3]

(3)(A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it …

    (iii) requires disclosure of privileged or other protected matter and no exception or waiver applies …

(3)(B) If a subpoena (i) requires disclosure of a trade secret or other confidential research, development, or commercial information … the court may order … production only upon specified conditions.

In addition, Fed.R.Civ.P. 26(c)(7) permits the court to issue a protective order which provides "that a trade secret or other confi-

---

1. Upjohn's complaint alleges Unfair Competition, Interference with Contractual Relations and Prospective Business Advantage, Misappropriation of Trade Secrets, and Conversion, and seeks injunctive relief and damages.

2. Hygieia's counter-claim alleges Unlawful Restraint of Trade, Unlawful Business Practices, and Negligent and Intentional Interference With Prospective Economic Advantage, and seeks injunctive relief and damages.

3. Hygieia earlier contended that the subpoenas did not meet the technical requirements of Rule 45(a)(1)(D), since they failed to "set forth the text of subdivisions (c) and (d) of this rule." However, Upjohn has provided copies of the subpoenas which clearly set forth these provisions. *See* Exhibit 1 to Declaration of W. Patrick Bengtsson.

dential research, development, or commercial information not be disclosed or be disclosed only in a designated way."

"As with most evidentiary and discovery privileges recognized by law, 'there is no absolute privilege for trade secrets and similar confidential information.' 'The courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure. Frequently, they have been afforded a limited protection.'" *Federal Open Market Committee v. Merrill,* 443 U.S. 340, 362, 99 S.Ct. 2800, 61 L.Ed.2d 587 (1979) (citations omitted); see also *Hartley Pen Co. v. U.S. District Court, Etc.,* 287 F.2d 324, 330 (9th Cir. 1961).

The qualified nature of the trade secret privilege is expressly set forth in Cal.Evid. Code § 1060: "... [T]he owner of a trade secret has a privilege to refuse to disclose the secret, and to prevent another from disclosing it, if the allowance of the privilege will not tend to conceal fraud or otherwise work injustice." "In order to resist discovery of a trade secret, a party must first demonstrate by competent evidence that the information sought through discovery is a trade secret and that disclosure of the secret might be harmful. If this showing is made, 'the burden shifts to the party seeking discovery to establish that the disclosure of trade secrets is relevant and necessary to the action.'" *Coca–Cola Bottling Co. v. Coca–Cola Co.,* 107 F.R.D. 288, 292 (D.Del.1985), quoting *Centurion Industries, Inc. v. Warren Steurer & Associates,* 665 F.2d 323, 325 (10th Cir.1981) (citations omitted).

■ State privilege law applies, as in the instant case, to state claims brought in federal court pursuant to diversity jurisdiction. Fed.R.Evid. 501. Under California law, as in federal common law, the party asserting an evidentiary privilege has the burden of establishing its existence. Here, Hygieia has the burden of establishing that the information

sought by the subpoenas implicates a trade secret. *Agricultural Labor Relations Board v. Richard A. Glass Co.,* 175 Cal.App.3d 703, 221 Cal.Rptr. 63, 69–70 (1985), *Tornay v. United States,* 840 F.2d 1424, 1426 (9th Cir. 1988). As defined by Section 3426.1(d) of the California Civil Code:

"Trade secret" means information, including a formula, pattern, compilation, program, devise, method, technique, or process, that:

(1) Derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and

(2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

■ Upjohn does not dispute Hygieia's assertion that the information sought by plaintiff's subpoenas implicates Hygieia's trade secrets. Nor does this court. The data underlying the licensure of defendants' "J–5 E. coli" vaccine is not commonly known to individuals who could utilize the information to derive economic value, and defendants actively seek to maintain its secrecy in order to limit their market competition and thereby avoid irreparable economic harm. *See Self Directed Placement Corp. v. Control Data Corp.,* 908 F.2d 462, 465–466 (9th Cir.1990).

■ Accordingly, the burden shifts to Upjohn to demonstrate that the requested discovery is relevant and essential to a judicial determination of its case. Significantly, the parties' interests converge on the single most important factual issue of this case, and which forms the backbone of the parties' complaint and counter-claim: whether the vaccines are distinct, that is, whether the production of Hygieia's "J–5 E. coli" vaccine relies on trade secret or confidential information misappropriated from PHL/Upjohn? The court agrees with plaintiff that judicial resolution is not possible without permitting the requested discovery.[4] To conclude other-

---

4. Defendants' unilateral suggestion that the matter be resolved by neutral parties within CDFA and USDA ignores the reality that the parties, with the filing of their pleadings, seek judicial resolution of this case. The parties may, of course, *agree* to pursue any available administrative procedures that will narrow the issues presented to the court, including the appointment of stipulated experts. However, the court cannot and will not compel the parties to so stipulate.

wise would contravene Cal.Evid.Code § 1060, by insulating from judicial inquiry matters of alleged injustice simply by a party's assertion of trade secrets. Moreover, with respect to discovery requests in general, courts are to broadly construe relevancy requirements. *N.L.R.B. v. Local Union 497*, 795 F.2d 836, 838 (9th Cir.1986); *N.L.R.B. v. Leland Stanford Jr. University*, 715 F.2d 473, 474 (9th Cir.1983).

Hygieia seeks to narrow the scope of the subpoenas by disallowing discovery of: "(1) ... trade secret information not related to the J–5 vaccines or data generated after July 1991 when Dr. Wallis left the employ of PHL; (2) ... trade secret information regarding facilities and other products of the parties outside the scope of this litigation; and (3) access of the disclosed information to anyone other than trial counsel and, only if necessary, independent, neutral experts either mutually agreed upon by the parties or appointed by the Special Master." Hygieia's Supplemental Brief of Apr. 15, 1993, p. 23. In addition, Hygieia seeks to (4) require Upjohn to identify the trade secret information which it alleges was misappropriated. *Id.*, at pp. 17–22.

With respect to (1), Hygieia asserts that any allegedly misappropriated J–5 data must necessarily have been taken by Dr. Wallis during her tenure with PHL, from December, 1988, to July, 1991, and, therefore, that any discovery of material generated after July, 1991, is necessarily irrelevant to the action. The subpoenas place no time limitations on the materials requested. The court disagrees. As Upjohn has responded, it is possible that documents in the CDFA and USDA files which purport to be created after July, 1991, could nevertheless incorporate information misappropriated before that date.

Upjohn has responded adequately to (2), by agreeing to limit each of its subpoena requests "to documents which refer or relate to the J–5 or any other E. coli antigen-based vaccine for mastitis." Upjohn's Supplemental Brief of Apr. 23, 1993, p. 10. This limitation necessarily circumscribes the discovery of documents underlying Hygieia's "establishment license" (defined by Upjohn to include "PHL technology, customer lists, price

lists, vaccine components, mailing lists, formulas and research"). Upjohn's Supplemental Brief of Apr. 23, 1993, pp. 9–11.

With respect to (3), the accompanying Protective Order accords access of the confidential material only to retained outside trial counsel, limited legal support staff and court personnel, and outside experts or consultants. *See* Protective Order, Provision # 5. However, the order is without prejudice to the right of any party to, inter alia, seek modification of the order. *Id.*, Provision # 9. This includes, as stated by the court at the hearing on this matter, the right of Upjohn to move to amend the protective order to allow access of the discovered material by Upjohn's in-house counsel, subject to the holdings in *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.1992), *cert. den. B.B. Asset Management, Inc. v. Symantec Corp.*, — U.S. —, 113 S.Ct. 198, 121 L.Ed.2d 141 (1992), and *U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468 (Fed.Cir.1984).

Hygieia seeks to further narrow the scope of discovery by (4) requiring Upjohn to identify the trade secret and confidential information which it alleges was misappropriated, thus providing a baseline for determining the relevance of requested discovery. Hygieia relies on *Xerox Corp. v. International Bus. Mach. Corp.*, 64 F.R.D. 367 (S.D.N.Y.1974), in which the parties agreed to rely on a special master to make initial discovery determinations. The district judge upheld the special master's instruction that Xerox identify the trade secret and confidential information which it alleged IBM had misappropriated, in order to more narrowly define the scope and relevancy of its discovery. The instant case is distinguishable. Here the alleged misappropriation is already narrowly defined as that information pertaining to a singular vaccine which may have been taken by defendant Wallis during her employment with PHL, and misapplied to the production of defendants' own vaccine. *Xerox*, in contrast, involved two broad suits, both of which generally alleged patent infringement and misappropriation of trade secrets and confidential information. Of necessity, the court required Xerox to "identify in detail *all* trade

secrets and confidential information alleged to have been misappropriated by IBM." *Id.,* at 372.

■ Finally, Hygieia seeks the appointment and interposition of a special master whose purpose would be to determine the relevancy of this, and subsequent, discovery requests in this action. Specifically, Hygieia seeks the appointment of a Magistrate Judge of this court as special master, pursuant to 28 U.S.C. § 636(b)(2), Fed.R.Civ.P. 53, and E.D.Cal.L.R. 300(b) and 301. Hygieia's request is based on "the complicated and sensitive nature of the issues" presented by this case. Hygieia's Supplemental Brief of Apr. 23, 1993, p. 4.

Upjohn contests the purported necessity of such appointments, thus bringing Hygieia's request within the parameters of Fed. R.Civ.P. 53(b), which provides that "[a] reference to a master shall be the exception and not the rule. In actions to be tried by a jury, a reference shall be made only when the issues are complicated ..." Defendants have demanded a jury trial in this case. *See* Counterclaim.

■ While the issues are indeed complicated in this action, they are no more complicated than those presented by many cases that come before this court. As the U.S. Supreme Court has noted, appointment of a special master may be justified only in those exceptional cases where a showing has been made that "the legal issues are too complicated for the jury adequately to handle alone." *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 478, 82 S.Ct. 894, 8 L.Ed.2d 44 (1962). "Even this limited inroad upon the right to trial by jury 'should seldom be made, and if at all only when unusual circumstances exist.'" *Id.,* at n. 18 (citations omitted). "[R]eference to a master is justified only in very rare cases." Wright & Miller, *Federal Practice and Procedure,* Vol. 9, § 2601, p. 777 (1971).

Hygieia has not shown that this action represents one of those "rare cases" justifying appointment of a special master. There is no showing that the issues of this case cannot be sufficiently narrowed and refined to be submitted directly to a jury. Nor does it appear that the quantity of material that may be generated is so voluminous, nor the problems generated by the present discovery so contentious, as to presently require the appointment of a special master. *Cf. Xerox Corp. v. International Bus. Mach. Corp., supra,* 64 F.R.D. at 369. Rather, it appears that Hygieia's principle motivation in seeking appointment of a special master is to further insulate the trade secret information that may be revealed through discovery.

The court is not insensitive to Hygieia's protective stance, and is, moreover, obliged by Fed.R.Civ.P., Rules 45 and 26, to ensure the limited circulation of Hygieia's trade secret and confidential information in response to the pending subpoenas. Throughout this discussion, the court has evaluated the relevance and necessity of the requested discovery against the potential harm of disclosure. In balancing the need for disclosure against the harm that could ensue from disclosure, the court is able to accommodate both considerations by the issuance of a protective order.

As stated by the Tenth Circuit in *Centurion Industries, Inc. v. Warren Steurer, Etc., supra,* 665 F.2d at 326:

It is within the sound discretion of the trial court to decide whether trade secrets are relevant and whether the need outweighs the harm of disclosure. Likewise, if the trade secrets are deemed relevant and necessary, the appropriate safeguards that should attend their disclosure by means of a protective order are also a matter within the trial court's discretion ... In trade secret battles, 'the claim of irreparable competitive injury must be balanced against the need for the information in the preparation of the defense.' (Quoting *Covey Oil Co. v. Continental Oil Co.,* 340 F.2d 993, 997 (10th Cir.1965)).

Accordingly, the court denies Hygieia's motion to quash, but modifies each request of Upjohn's subpoenas duces tecum to CDFA and USDA to materials "referring or relating to any J–5 vaccine or any E. coli antigen-

based vaccine for mastitis." In addition, the court issues the following Protective Order:[5]

*PROTECTIVE ORDER*

1. Any information, document, or thing produced in connection with this litigation that is reasonably believed by the producing party to contain proprietary or trade secret information may be designated as "Confidential Material." Such designation by the producing party shall be made pursuant to a bona fide determination that such materials or information contain or reveal confidential, commercially sensitive or proprietary matters. Such designation may be made by stamping or otherwise marking the material prior to production as follows: "Confidential Material Subject to Protective Order." As used herein, "Confidential Material" includes (a) all papers, tapes, documents (including answers to interrogatories or requests for admission), disks, diskettes, and other tangible things produced by or obtained from any person in connection with this litigation; (b) transcripts of depositions herein and exhibits thereto; and (c) all copies, extracts, and complete or partial summaries prepared from such papers, documents, or things.[6]

2. Should any party object to a "Confidential Material" designation, and should the parties be unable to resolve the objection informally, then the objecting party may move for an order determining whether the materials are properly designated. Until a motion is filed and resolved by this court, all materials designated "Confidential Material" shall be treated in accordance with this order.

3. Confidential Material shall be used solely in connection with this litigation and the preparation and trial of this case, or any related appellate proceeding, and not for any other purpose, including any business, competitive, or governmental purpose or function.

4. Confidential Material may not be disclosed except as set forth in paragraph 5.

5. Confidential Material may be disclosed only to the following persons:

**(a) Retained counsel for any party to this action, but not including in-house counsel to either party, defined as counsel regularly employed or paid by, or associated with, a party, and/or whose offices are located within any premises of a party; process Confidential Material, including paralegal, stenographic, clerical and secretarial personnel regularly employed by counsel authorized in (a);**

**(c) Court personnel including stenographic reporters engaged in such proceedings as are necessarily incidental to preparation for the trial of this action;**

**(d) Any outside expert or consultant retained by authorized counsel in connection with this action and not otherwise employed by or associated with either party.**

6. Each outside expert or consultant to whom Confidential Material is furnished, shown or disclosed, shall, prior to the time he receives such materials, be provided by the person furnishing him such material a copy of this order and agree to be bound by its terms, and shall certify that he or she has carefully read the order and fully understands its terms. Such person also must consent to be subject to the jurisdiction of the United States District Court for the Eastern District of California with respect to any proceeding relating to enforcement of this order, including, without limitation, any proceeding relating to contempt of court. The agreement shall be of the form set forth

---

**5.** Defendants seek Rule 11 sanctions based on their contention that plaintiff's issuance of the subpoenas was done solely to harass defendants and to deplete their resources. The court finds no basis for this contention. Given the essential quality of the information sought, plaintiff's subpoenas are certainly legitimate. So viewed, defendant's request for sanctions itself borders on frivolous, and the request is denied.

**6.** A party to this litigation may prospectively declare that confidential information to be produced which is in the custody of a third person/party is "Confidential Material." Counsel for the party receiving the prospective confidential material shall treat the material as "Confidential Material" until such time as the party seeking to protect public disclosure of the material has had a reasonable opportunity to review and stamp the received material in accordance with this paragraph.

in Exhibit "A" hereto. Counsel making disclosure to any person as described hereinabove shall retain the original executed copy of said agreement until final termination of this litigation.

7. All persons who receive confidential information pursuant to 5(b) shall execute an Agreement in the form set forth by Exhibit "A" hereto.

8. At the conclusion of the trial and of any appeal or upon other termination of this litigation, all Confidential Material received under the provisions of this order shall be tendered back to the producing party, or, at the discretion of the producing party, destroyed. Provisions of this order insofar as they restrict the communication and use of Confidential Material shall, without written permission of the producing party or further order of this court, continue to be binding on all persons subject to the terms of this order until further order of this court.

9. The restrictions on the use of Confidential Material established pursuant to this order do not apply to the party producing such material.[7]

10. The foregoing is without prejudice to the right of any party: (a) to apply to the court for a further protective order relating to any Confidential Material or relating to any discovery in this litigation; (b) to object to the production of documents not covered by the court at the hearing or by this order and which it considers not subject to discovery; (c) to apply to the court for an order requiring the removal of the Confidential Material designation from any documents; and (d) to apply to the court for an order compelling production of documents or modification of this order or for any order permitting disclosure of Confidential Material beyond the terms of this Order.

11. This Protective Order applies only to confidential and proprietary trade secret information and material. Counsel is on notice that the court discourages over-inclusion of Confidential Material. For this reason, the court reserves the right to (1) revisit counsel's description of Confidential Material and make its own rulings, and (2) alter this protective order at any time during the pending litigation if the number of sealed documents becomes too great.

12. All filings with the court that reference confidential material shall be dual. Public filings shall delete all Confidential Material. Documents that reveal Confidential Material shall be filed under seal in their entirety, and labeled with a cover sheet as follows: "This Document is Subject to a Protective Order Issued by the Court and May Not be Examined or Copied Except in Compliance With That Order. *The Upjohn Company v. Hygieia Biological Laboratories et al.,* Civ. No. 93–293–WBS–GGH." Documents so labeled shall be kept by the Clerk under seal and shall be made available only to the court or persons authorized by the terms of this order to have access thereto. Upon failure of the filing party to so file a document under seal, the producing party may request that the court place the filing under seal.

13. If Confidential Material is disclosed at a deposition, only those persons may be present who are authorized by the terms of this order to receive such material. The portions of the transcripts of all testimony designated as Confidential Material shall be separately bound by the reporter in booklets bearing the appropriate designation. If any document or information designated as Confidential Material pursuant to this order is used during the course of a deposition herein, that portion of the deposition record reflecting such material shall be stamped with the appropriate designation and access thereto shall be limited pursuant to the terms of this order.

14. Nothing in this order shall preclude a party from showing or disclosing to any person not listed in paragraph 5 of this Order deposition transcripts, pleadings or briefs containing Confidential Material if the document containing such materials has been masked or deleted so that no disclosure of Confidential Material occurs.

*CONCLUSION*

Subject to the above set forth protective order:

---

7. If a party to this action has submitted material, which is now determined to be confidential pursuant to this protective order, to third parties, the submitting party is the "party producing such material" for the purposes of paragraph 9.

1. The subpoenas served on CDFA and USDA on or about March 11, 1993, by plaintiffs in this action are lawful, valid, and shall be enforced;

2. The CDFA and USDA shall produce documents in accordance with the subpoenas within twenty days of the date that certified service is received by CDFA and USDA in accordance with paragraph 3 below, except: each and every request in the subpoena is modified so that only documents that contain information that refers or relates to any J–5 vaccine or any E. coli antigen-based vaccine for mastitis need be produced.

3. Counsel for plaintiffs shall serve by certified mail a copy of this entire order and protective order on the person/entity served initially with the subpoenas.

4. CDFA and USDA shall produce the documents only to persons identified to them as persons permitted to review Confidential Material as set forth in subparagraphs (a) or (b) of paragraph 5 of the protective order.

IT IS SO ORDERED.

### EXHIBIT "A"

IN THE UNITED STATES
DISTRICT COURT

FOR THE EASTERN DISTRICT
OF CALIFORNIA

The Upjohn Company,

a Delaware Corporation,

Plaintiff,

v.

Hygieia Biological Laboratories,

a California Corporation,

and Dale M. Wallis, an

individual,

Defendants.

Civ. S–93–293 WBS/GGH

AGREEMENT TO BE BOUND BY PROTECTIVE ORDER OF THE UNITED STATES DISTRICT COURT, EASTERN DISTRICT OF CALIFORNIA

I hereby acknowledge that I have carefully read the Protective Order dated April ###, 1993, in the above-captioned case and that I fully understand the terms of the court's order, a copy of which is attached. I recognize that I am bound by the terms of that order, and I agree to comply with those terms. I agree, under penalty of perjury, not to disclose information designated thereunder as "Confidential Material" to any person not entitled to access such information. I further agree to use Confidential Material only in connection with this litigation, and not for any other purpose, including business, competitive or governmental purpose or function. I hereby consent to the jurisdiction of the United States District Court, Eastern District of California, in respect to any proceedings relative to the enforcement of that order, including without limitation, any proceeding related to contempt of court.