Malcolm OAKES, Trustee,

v.

HALVORSEN MARINE LTD., et al.

No. CV 97–3987–LGB(RCX).

United States District Court,
C.D. California.

April 2, 1998.

Donald M. Adams, Jr., Ventura, CA, for Plaintiff.

Gordon E. Gray, III, Irvine, CA, for Defendants.

## PROCEEDINGS: DEFENDANTS' MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND ANSWERS TO INTERROGATORIES

CHAPMAN, United States Magistrate Judge.

On March 2, 1998, defendants filed a Motion to Compel Production of Documents and Answers to Interrogatories, with joint stipulation containing supporting exhibits and declarations of Gordon E. Gray III and Donald M. Adams, Jr. The motion came on regularly for hearing before Magistrate Judge Rosalyn M. Chapman on April 2, 1998. The plaintiff was represented by Donald M. Adams, Jr., attorney at law, and defendants were represented by Gordon E. Gray III, attorney at law.

## BACKGROUND

On April 14, 1997, in the Superior Court for the County of Ventura, plaintiff Malcolm Oakes, as trustee of the Oakes Family Trust (hereafter "plaintiff"), filed an action against Halvorsen Marine Ltd., Harvey Halvorsen, and Does 1 to 100, setting forth six causes of action: (1) breach of contract, (2) breach of implied warranties of merchantability and fitness, (3) breach of express warranty, (4) fraud, (5) negligent representation, and (6) mistake. The gravamen of plaintiff's claims is that plaintiff bought, for $230,000.00, a 40–foot yacht built by defendant Halvorsen Marine, which was constructed in Hong Kong and which had numerous defects. The plaintiff seeks a recision of the contract or, in the alternative, consequential damages for repairing the yacht, punitive damages as to the fraud claim, and attorneys fees and other costs. The action was removed to the federal court on May 29, 1997, based on diversity of citizenship.

On May 30, 1997, defendants answered the complaint and raised 21 affirmative defenses. The defendants also counterclaimed against the Oakes Family Trust and plaintiff as an individual and as trustee of the Oakes Family Trust, setting forth four causes of action: (1) defamation, (2) violation of Section 43(a) of the Lanham Act, (3) intentional interference with business advantage, and (4) common law trade libel. The defendants/counterclaimants seek compensatory damages, punitive damages, injunctive relief, attorneys fees and the like. The counterdefendants answered the counterclaim on June 27, 1997, and raised 13 affirmative defenses.

On August 29, 1997, District Judge Lourdes G. Baird partially granted counterclaimants' motion for preliminary injunction. In so doing, Judge Baird specifically found that counterdefendants made certain false and libelous statements in an Internet website regarding counterclaimants' refusal to remedy a problem with the yacht's dead batteries, that the bulwarks of the yacht were failing, and that counterclaimants refused to inspect the yacht. Judge Baird further determined that counterclaimants were likely to prevail on their trade libel claim.

On November 12, 1997, the parties stipulated to, and the Court approved, a protective order governing the production and handling of documents and other discovery responses in the instant action. Under the terms of the protective order, documents and other discovery responses may be designated as "Confidential Material" on behalf of any party, thereby limiting the material's use to the instant litigation and prohibiting its use for any other purpose.

On February 25, 1998, Judge Baird, pursuant to stipulation of the parties, increased the interrogatory limit to 75 interrogatories including all discrete subparts.

## DISCUSSION

### I

Rule 1 of the Federal Rules of Civil Procedure directs that the rules "shall be construed and administered to secure the just, speedy, and inexpensive determination of every action." "There probably is no provision in the federal rules that is more important than this mandate. It reflects the spirit in which the rules were conceived and written, and in which they should be, and by and large have been, interpreted.... The Supreme Court of the United States has stated that these rules 'are to be accorded a broad and liberal treatment.'" *Trevino v. Celanese Corp.*, 701 F.2d 397, 405 (5th Cir.1983) (citing *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 391, 91 L.Ed. 451 (1947) and *Schlagenhauf v. Holder*, 379 U.S. 104, 114–15, 85 S.Ct. 234, 240, 13 L.Ed.2d 152 (1964)).

 Federal Rule of Civil Procedure 26(b)(1) provides for discovery in civil actions, as follows:

Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identify and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Rule 26 further permits the discovery of information which may simply relate to the *credibility* of a witness or other evidence in the case. Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, § 11.21 (1996 revised).

 Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence necessary to evaluate and resolve their dispute. Toward this end, Rule 26(b) is liberally interpreted to permit wide-ranging discovery of all information reasonably calculated to lead to discovery of admissible evidence; but the discoverable information need not be admissible at the trial. As commented upon by one district court:

A request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the subject matter of this action. Discovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought can have no possible bearing upon the subject matter of this action.

*Jones v. Commander, Kansas Army Ammunitions Plant*, 147 F.R.D. 248, 250 (D.Kan. 1993). The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections. *Nestle Foods Corp. v. Aetna Casualty & Surety Co.*, 135 F.R.D. 101, 104 (D.N.J.1990).

### II

The instant dispute focuses on three requests for production of documents and two interrogatories: Requests nos. 6, 7, and 36 and interrogatories nos. 1 and 25. The following sets forth the disputed discovery:

**Request no. 6: "All DOCUMENTS which RELATE TO the creation of the OAKES FAMILY TRUST."** In response, plaintiff/counterdefendants object on relevancy and privacy grounds.

Request no. 7: "All DOCUMENTS sufficient to identify the res of the OAKES FAMILY TRUST including but not limited to financial statements." In response, plaintiff/counterdefendants object on relevancy and privacy grounds and, further, invoke "California Civil Code Section 3295[,] which prohibits financial information discovery where punitive damages are being sought. This is the only reason why defendant [sic] seeks this information."

Request no. 36 asks: "DOCUMENTS sufficient to identify the net worth of Malcolm Oakes including but not limited to financial statements." In response, plaintiff/counterdefendants object on relevancy and privacy grounds and again invoke California Civil Code § 3295.

Interrogatory no. 1 asks: "Identify the res of the Oakes Family Trust." In response thereto, plaintiff/counterdefendants object on privacy grounds and again invoke Civil Code § 3295.

Interrogatory no. 25 asks: "Identify the net worth including the assets and liabilities of each and every counterdefendant in this action." In response thereto, plaintiff/counterdefendants object on privacy grounds and again invoke Civil Code § 3295. Further, counterdefendants object that the interrogatory exceeds the number limit of Fed.R.Civ.P. 33(a).

First, it is clear that the requests for production of documents and interrogatories seek relevant material. The Oakes Family Trust is a party to the litigation and, plaintiff/counterdefendants' assurances aside, defendants/counterclaimants may seek documents showing the creation of the Oakes Family Trust, as request no. 6 does. Moreover, there is no dispute that information concerning the counterdefendants' finances is relevant regarding the issue of punitive damages. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 270, 101 S.Ct. 2748, 2761, 69 L.Ed.2d 616 (1981) (noting that "evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded"); *Adams v. Murakami*, 54 Cal.3d 105, 114–16, 284 Cal.Rptr. 318, 323–25, 813 P.2d 1348, 1353–55 (1991) (holding that evidence of a defendant's

financial condition is a prerequisite to an award of punitive damages); *McMann v. Wadler*, 189 Cal.App.2d 124, 131, 11 Cal. Rptr. 37 (1961) (evidence of a defendant's wealth properly admitted in a defamation action as relevant to punitive damages).

 Privilege is a valid objection to discovery under Fed.R.Civ.P. 26(b)(5). *Walt Disney Co. v. DeFabiis*, 168 F.R.D. 281, 283 (C.D.Cal.1996). In a federal action based on diversity of citizenship jurisdiction, state law governs privilege claims. Fed.R.Evid. 501; *Upjohn Co. v. Hygieia Biological Labs.*, 151 F.R.D. 355, 358 (E.D.Cal.1993). Here, plaintiff/counterdefendants raise two claims of privilege. First, they claim the disputed discovery requests are privileged based on their privacy rights. "To the extent privacy is a matter of privilege under state law, federal courts will honor the privilege and protect the responding party from discovery." Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial*, § 11:77 (1996 revised). In California, the right to privacy is set forth in Article I, Section I of the California Constitution. It is not an absolute right, but a right subject to invasion depending upon the circumstances. *Hill v. National Collegiate Athletic Ass'n*, 7 Cal.4th 1, 37, 26 Cal.Rptr.2d 834, 857, 865 P.2d 633, 655–56 (1994). Moreover, the courts have frequently found that a party's need for the information may outweigh whatever privacy rights, if any, another party may have. *Cook v. Yellow Freight System, Inc.*, 132 F.R.D. 548, 552 (E.D.Cal. 1990) (citing with approval *Moskowitz v. Superior Court*, 137 Cal.App.3d 313, 316, 187 Cal.Rptr. 4 (1982)).

 Here, evidence of the net worth of the counterdefendants is crucial to the issue of punitive damages. "While a party does have an interest in nondisclosure and confidentiality of its financial records, this interest can be adequately protected by a protective order." *CEH, Inc. v. FV "Seafarer"*, 153 F.R.D. 491, 499 (D.R.I.1994). Such a protective order is in effect in the instant action, thereby accommodating the counterclaimants' need for the information while protecting counterdefendants' privacy. Moreover, counterclaimants and counterdefendants are not business com-

petitors, and disclosure of counterdefendants' financial records to counterclaimants under the protective order would not cause the counterdefendants great harm. *Id.*

Second, counterdefendants' claim that documents in response to request nos. 7 and 36 and answers to interrogatory nos. 1 and 25 are protected by California Civil Code ("Civ. C.") § 3295 is without merit. Nothing in Civ. C. § 3295 creates a privilege for discovery purposes. Rather, the statute is part of a pervasive statutory scheme for the purpose of establishing procedures for pleading exemplary or punitive damages and obtaining information relevant to that. Specifically, Civ. C. Section 3294(a) provides for exemplary or punitive damages "[i]n an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice...." Section 3294(c) defines malice, oppression, and fraud. Civil Code Section 3295 then provides, in relevant part:

(a) The court may, for good cause, grant any defendant a protective order requiring the plaintiff to produce evidence of a prima facie case of liability for damages pursuant to Section 3294, prior to the introduction of evidence of:

(1) The profits the defendant has gained by virtue of the wrongful course of conduct of the nature and type shown by the evidence.

(2) The financial condition of the defendant.

(b) Nothing in this section shall prohibit the introduction of prima facie evidence to establish a case for damages pursuant to Section 3294.

(c) No pretrial discovery by the plaintiff shall be permitted with respect to the evidence referred to in paragraphs (1) and (2) of subdivision (a) unless the court enters an order permitting such discovery pursuant to this subdivision. However, the plaintiff may subpoena documents or witnesses to be available at the trial for the purpose of establishing the profits or financial condition referred to in subdivision (a), and the defendant may be required to identify documents in the defendant's pos-session which are relevant and admissible for that purpose and the witnesses employed by or related to the defendant who would be most competent to testify to those facts. Upon motion by the plaintiff supported by appropriate affidavits and after a hearing, if the court deems a hearing to be necessary, the court may at any time enter an order permitting the discovery otherwise prohibited by this subdivision if the court finds, on the basis of the supporting and opposing affidavits presented, that the plaintiff has established that there is a substantial probability that the plaintiff will prevail on the claim pursuant to Section 3294. Such order shall not be considered to be a determination on the merits of the claim or any defense thereto and shall not be given in evidence or referred to at the trial.

(d) * * *

(e) * * *

(f) * * *

▬ Federal courts sitting in diversity cases apply federal procedural law and state substantive law. *Hanna v. Plumer,* 380 U.S. 460, 465, 85 S.Ct. 1136, 1141, 14 L.Ed.2d 8 (1965); *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Examining Civil Code Section 3295(a)–(c), this Court finds that it is clearly a procedural law. That is, Section 3295(c) merely restricts when and how evidence of a defendant's financial condition is obtained. Discovery "is a procedural matter governed in the federal courts by the Federal Rules of Civil Procedure. Thus, state discovery practices are usually irrelevant." *CEH,* 153 F.R.D. at 497–98; *see also* 8 Wright & Miller, Federal Practice and Procedure: Civil § 2005 (1970) (state law will govern only when the Federal Rules so indicate). "Characterizing an issue as 'procedural' rather than 'substantive' does not necessarily end the inquiry, although '[c]oncerning matters covered by the Federal Rules of Civil Procedure, the characterization question is usually unproblematic...'." *Gasperini v. Center for Humanities, Inc.,* 518 U.S. 415, 427 n. 7, 116 S.Ct. 2211, 2219 n. 7, 135 L.Ed.2d 659 (1996).

Further, as a state discovery and procedural law, Civ. C. § 3295 conflicts with Fed. R.Civ.P. 26(b); it establishes a discovery scheme fundamentally inconsistent with the discovery rules under the Federal Rules of Civil Procedure. This Court, thus, finds the reasoning of District Judge Shubb in *Hamm v. American Home Products Corp.*, 888 F.Supp. 1037, 1038 (E.D.Cal.1995), to be persuasive. In Hamm, the court determined that Civil Code § 3295(d) is a procedural law which conflicts with Federal Rule of Civil Procedure 42(b).

 The discovery of financial information relevant to a punitive damages claim is permissible under the Federal Rules of Civil Procedure, whether or not such evidence would be admissible at trial. *CEH*, 153 F.R.D. at 498–99. Moreover, as discussed above, one of the purposes behind the broad federal discovery rules is to facilitate settlement, and such financial information is valuable in assisting both sides in making a realistic appraisal of the case, and may lead to settlement and avoid protracted litigation. *Id.* at 499.

The major case relied on by counterdefendants for the proposition that Civ. C. § 3295 is substantive, rather than procedural, is *State of Wisconsin Investment Bd. v. Plantation Square Assoc., Ltd.*, 761 F.Supp. 1569, 1579–80 (S.D.Fla.1991), in which the court applied a Florida statute similar to Civ. C. § 3295 to postpone discovery of a defendant's net worth until after the plaintiff had been allowed to pursue a punitive damages claim. Not only does this Court find the reasoning in Wisconsin Investment Board to be fallacious, it finds unwarranted, here, the court's concern to prevent forum shopping by "[p]laintiffs with insubstantial punitive damage claims—especially those of the harassing and unscrupulous sort—[who] would likely prefer the federal over the State forum were [the state statute] not applied...." Judge Baird, in granting counterclaimants' motion for a preliminary injunction, has already determined that counterdefendants have, in at least three instances, libeled counterclaimants, and thus, they have a substantial punitive damages claim.

## ORDER

The counterdefendants shall, within thirty (30) days of the date of this Order, produce documents in response to request nos. 6, 7 and 36 and verified answers to interrogatory nos. 1 and 25.